UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDRICK HEINZ,

    Plaintiff,                     CIVIL ACTION NO. 05-73470

    v.                              DISTRICT JUDGE GEORGE CARAM STEEH

LELAND TESCHENDORF,          MAGISTRATE JUDGE VIRGINIA M. MORGAN
THOMAS T. KERN, JAMES E.
JASHINSKE, KYLE JASKULKA,
CURTIS CHAMBERS, DAVID
SCHWARTZ, BRIAN HARRIS,
and TUSCOLA COUNTY,
jointly and severally

    Defendants.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

    Plaintiff, an inmate at the Marquette Branch Prison, Marquette, Michigan, filed suit under 42 U.S.C. § 1983 against Tuscola County, Michigan, and several Tuscola County officials, alleging that he was subjected to cruel and unusual punishment while he was incarcerated at the Tuscola County Jail pending trial on various criminal charges. The matter comes before the court on defendants' motion for summary judgment. For the reasons stated below, the court recommends that defendants' motion be granted and that plaintiff's complaint be dismissed with prejudice.

**II. Background**

On June 11, 2003, plaintiff was arrested on charges of first-degree criminal sexual conduct (CSC) and taken to the Tuscola County Jail, where he remained until September 17, 2003, when he was released on bond. On January 26, 2004, plaintiff was arrested on separate CSC charges and was brought back to the Tuscola County Jail. Plaintiff was held at the Tuscola County Jail pending trial on the CSC charges. He subsequently pleaded nolo contendre to the charges and, on April 27, 2005, was transferred to the custody of the Michigan Department of Corrections to begin serving his sentence.[1] His second stay at the Tuscola Jail lasted 456 days.

Plaintiff alleges in his *pro se* complaint that defendants deprived him of adequate out-of-cell time for exercise, stating that to the best of his recollection, he was not allowed out of his cell to exercise at all during his first stay at the jail and that he was allowed out of his cell for such purposes only three times for a total of 45 minutes (15 minutes per session) during his second period of detention. Plaintiff further alleges that he suffers from various ailments and that he requires a special diet due to his ailments. He claims that he was denied a nutritionally adequate diet during his stay at the Tuscola County Jail, resulting in loss of weight and other health problems. Plaintiff alleges that defendants violated his rights under the Eight and Fourteenth Amendments to the United States Constitution by denying him adequate out-of-cell exercise time and a nutritionally adequate diet. He further alleges that Tuscola County had a pattern or practice of failing to provide its detainees with adequate out-of-cell exercise time and

---

[1] Plaintiff pleaded nolo contendre to four counts of first-degree CSC and was sentenced to a term of imprisonment of 10 years, 6 months, to 20 years on each count.

nutritionally adequate food, and that the County had a pattern or practice of failing to train its employees regarding the provision of adequate out-of-cell exercise time and nutritionally adequate food. Plaintiff seeks compensatory damages, punitive damages, and declaratory relief.

The defendants in this matter are: (1) Tuscola County, (2) Thomas T. Kern, the Tuscola County Sheriff, (3) Leland Teschendorf, a lieutenant with the Corrections Division of the Tuscola County Sheriff's Department, (4) James E. Jashinske, the Tuscola County Undersheriff, (5) Kyle Jaskulka, (6), Curtis Chambers, a sergeant with the Corrections Division of the Tuscola County Sheriff's Department, (7) David Schwartz, a corporal with the Corrections Division of the Tuscola County Sheriff's Department, and (8) Brian Harris, a corporal with the Corrections Division of Tuscola the County Sheriff's Department. Defendants contend that plaintiff has failed to demonstrate the existence of a genuine issue of material fact and that even if a constitutional violation occurred, they are entitled to qualified immunity.

### III.  Legal Standards

#### A.  Summary Judgment Standard

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In

deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  Once the moving party has carried his or her burden of demonstrating the absence of a genuine issue of material fact, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587, 106 S.Ct. 1356, 89 L.Ed.2d 538. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1356, 89 L.Ed.2d 538  (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

**B.  Qualified Immunity**

"[G]overnment officials performing discretionary functions enjoy qualified immunity from liability for performance of their official duties." Thomas v. Whalen, 51 F.3d 1285, 1289 (6th Cir. 1995).  In determining whether a government official is entitled qualified immunity, the first question that must be answered is whether, "[t]aken in the light most favorable to the party asserting the injury. . .the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  If the facts alleged demonstrate that a constitutional violation occurred, the court must then determine whether the right in question was clearly established. Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

-4-

officer that his conduct was unlawful in the situation he confronted." Id., 533 U.S. at 202, 121 S.Ct. 2151, 150 L.Ed.2d 272.  Further, as the Supreme Court has cautioned, "[t]his inquiry...must be undertaken in light of the specific context of the case, not as a broad general proposition." Id., 533 U.S. at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 .

### C.  Standards Applicable to Pre-Trial Detainee Claims

Plaintiff's claims arise from the conditions of his confinement as a pretrial detainee.  The Cruel and Unusual Punishments Clause of the Eighth Amendment does not apply to pretrial detainees because that clause "'is concerned' with punishment by the state 'after it has secured a formal adjudication of guilt in accordance with due process of the law[.]'" Spencer v. Bouchard, 449 F.3d 721, 727 (6th Cir. 2006)(quoting Ingraham v. Wright, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).  However, pretrial detainees are protected from cruel and unusual punishments by the Due Process Clause of the Fourteenth Amendment, and that protection is essentially co-extensive with the protections available to inmates under the Eighth Amendment. Spencer, 449 F.3d at 727.  Thus, Eighth Amendment jurisprudence is equally applicable to claims brought by pretrial detainees under the Fourteenth Amendment.  Id. at 727-28.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).  Prison officials bear a duty under the Eighth Amendment to provide "humane conditions of confinement," including adequate food, clothing, shelter, and medical care.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  To prevail on a conditions-of-confinement claim, a

detainee must plead and prove two elements, one objective and the other subjective. Id. First, he must show that the deprivation is one which, when viewed objectively, is sufficiently serious to warrant scrutiny under the Eighth Amendment. To meet this requirement, a detainee must demonstrate that the defendant's act or omission resulted in "the denial of 'the minimal civilized measure of life's necessities.'" Id., 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Second, the detainee must demonstrate that the defendant acted with deliberate indifference to the detainee's health or safety. Id. In order to satisfy this subjective element, the detainee must show that the defendant both knew of and disregarded an excessive risk to inmate health or safety. Id., 511 U.S. at 837. The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

**IV.  Analysis**

    **A.  Failure to Provide Adequate Out-of-Cell Exercise Time**

Plaintiff, as noted above, alleges that he was denied adequate out-of-cell-time for exercise. He claims, both in his complaint and in the affidavit he submitted in opposition to defendants' motion, that he was afforded no out-of-cell time for exercise during his initial three-month period of detention at the Tuscola County Jail and that he was allowed out of his cell for such purposes on only three occasions, for 15 minutes each, during his second period of detention. He contends that such deprivation constituted a violation of his right to be free of cruel and unusual punishment.

In keeping with the Supreme Court's oft-spoken admonition that courts must afford prison administrators wide latitude in their handling of day-to-day prison operations, see, e.g., Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), courts have refrained from setting down hard and fast rules regarding the quantity and quality of exercise to which an inmate or pretrial detainee is entitled. However, at a minimum, "[i]t is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health." Patterson v. Mintzes, 717 F.2d 284 (6th Cir. 1983). Beyond that general proposition, the question of whether a deprivation of exercise time rises to the level of a constitutional violation is a fact dependent inquiry. See, e.g., Meador-Bey v. Jones, 983 F.2d 1067, 1992 WL 376889 (6th Cir.(Mich.))("The determination of when restricted exercise rises to a level of constitutional magnitude depends upon the facts of each case"). In making this inquiry, courts should consider the totality of the circumstances, including the length of the deprivation, the availability of reasonable alternatives to out-of-cell exercise time, penological justifications for the deprivation, whether the inmate suffered any ill health effects as a result of the deprivation, and the amount of out-of-cell time per day the inmate is allowed. See Patterson, 717 F.2d at 289, see also Rodgers v. Jabe, 43 F.3d 1082, 1086 (6th Cir. 1995); Dabney v. McGinnis, 2006 WL 1285625 at *4 (W.D.N.Y. 2006)(citing following factors courts should consider in examining denial of exercise claim: (1) duration of the deprivation, (2) extent of the deprivation, (3) availability of other out-of-cell activities, (4) opportunity for in-cell exercise, and (5) justification for the deprivation).

While defendants filed an answer denying plaintiff's allegations as to the extent of the deprivation of out-of-cell exercise time, they have made no attempt to refute those allegations in their motion for summary judgment or supporting brief, and they have submitted no evidence showing that plaintiff was permitted more extensive out-of-cell exercise time than he claims. In fact, the jail records submitted by defendants showing plaintiff's out-of-cell activities corroborate plaintiff's allegations.[2] Those records show that plaintiff was granted ample out-of-cell time to go to the library, attend church services, and meet with visitors, but indicate that he was offered out-of-cell exercise time on only four occasions during his second stay at the Tuscola County Jail – on April 16, July 30, August 5, and August 10 of 2004. (Defendants' Exhibit 1, pp. 943, 951, 1196).[3] Defendants neither claim nor provide any evidence indicating that plaintiff was permitted any out-of-cell exercise time during his initial stay at the jail. Accordingly, the record, viewed favorably to plaintiff, shows that plaintiff was subjected to a near-total deprivation of out-of-cell exercise time during his lengthy stay at the Tuscola County Jail.

Further, defendants provide no evidence of a particular penological justification for such a lengthy and substantial deprivation. In support of their motion, defendants' submitted the

---

[2]The court notes that the majority of the documents defendants submitted in support of their motion, including the jail records, have not been properly sworn or certified and thus do not meet the requirements of Fed. R. Civ. P. 56(e), as required in the Sixth Circuit. See Moore v. Holbrook, 2 F.3d 697, 698-99 (6th Cir. 1993). However, plaintiff has not objected to the submission of those documents. Accordingly, the court has considered them in deciding defendants' motion.

[3]The jail records reflect that on August 10, 2004, plaintiff was offered an opportunity to go to the exercise yard, but that he declined to do so.

affidavit of defendant Leland Teschendorf, the Jail Administrator of the Tuscola County Jail. In that affidavit, Teschendorf states that "to the extent Mr. Heinz' ability to be out of his cell was limited, the restriction was not imposed upon him as a matter of punishment or for the purpose of taking disciplinary action against him. Rather the restrictions from Mr. Heinz cell assignments were for the administrative purpose of maintaining security at the Tuscola County Jail." (Defendants' Exhibit 7) The court places no weight on this statement. Defendants have neither alleged nor presented evidence indicating that conditions at the jail were such that it was necessary to keep plaintiff in his cell with no opportunity for exercise for such extended periods. There is no evidence in the record that plaintiff was a particular security risk or that specific incidents at the jail, such as riots or other disturbances, necessitated a near-total deprivation of out-of-cell exercise time. It is generally recognized that even inmates in segregation or under lock-down cannot be totally deprived of out-of-cell exercise time for an indefinite period. See, e.g., Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)(complete denial of exercise violated Eighth Amendment rights of inmates in disciplinary confinement; inmates entitled to one hour out-of-cell exercise time per day, five days a week); Delaney v. DeTella, 256 F.3d 679 (7th Cir. 2001)(finding that complete denial of out-of-cell exercise privileges during six-month lockdown was objectively unreasonable); Gawloski v. Dallman, 803 F.Supp. 103, 110 (S.D.Ohio 1992)("[T]his court recognizes that prison officials must provide inmates confined in protective custody with the opportunity to exercise or recreate outside their cells"). Thus, even if plaintiff was a security risk or conditions at the jail otherwise necessitated extremely stringent security measures, a total deprivation of exercise privileges for the initial 90 days plaintiff spent at the jail

would be difficult to justify, and a near-total deprivation of such privileges for well over a year during plaintiff's second stay at the jail would be nearly impossible to justify.  In an apparent attempt to provide some penological justification for the deprivation, defendant Teschendorf states in his affidavit that plaintiff was not eligible for the jail's trustee program, which apparently would have allowed him more out-of-cell time, due to the nature of the offenses with which he was charged.  The fact that he was not eligible for the trustee program does not prove, or even suggest, that plaintiff was a particular security risk.  In any event, even if he was a security risk, a near-total deprivation of exercise time would not be justified.  Defendant Teschendorf also states that the limitations on plaintiff's exercise time were simply due to insufficient facilities and a lack of staff to monitor detainees while exercising.  Defendants indicate that the jail has only one multi-purpose room which is often unavailable for recreational uses.  The court recognizes that the Tuscola County Jail is just that – a jail.  It is not a penitentiary and is likely not meant to house detainees for extended periods of time.  However, the records submitted by defendants indicate that the facility does have an exercise yard.  Thus, the fact that the jail has only one multi-purpose room is of little significance.  Further, facility and manpower constraints might be relevant factors for consideration where a detainee has been denied out-of-cell exercise for a short period of time.  A near-total deprivation of exercise time cannot be justified based upon such constraints for a detainee, such as plaintiff, who spent well over a year at the jail.  In sum, the court finds that defendants have failed to establish any reasonable penological or institutional justification for the lack of out-of-cell exercise time provided to plaintiff.

Further, there is little evidence in the record suggesting that plaintiff was offered reasonable alternatives to out-of-cell exercise time.  The jail records show that plaintiff was permitted out-of-cell time for purposes such as going to the library, attending church or bible study, watching movies, and meeting with visitors, but there is no indication in the record that he was allowed other general out-of-cell time during which he might have improvised some sort of exercise regimen.  In addition, there is scant evidence in the record as to whether he could engage in any meaningful exercise in his cell.  Defendant Teschendorf states in his affidavit that plaintiff spent the majority of his time at the Tuscola County Jail in either Cell A-6 or Cell C-1. (Defendants' Exhibit 7)  He further states that Cell A-6 has an area of 196 square feet and is designed to hold 3 inmates, and that Cell C-1 has an area of 942 square feet and is designed to hold up 12 inmates.  Id.  Beyond that, there is no indication in the record as to the layout of the cells, how many people plaintiff typically shared his cell with, or whether there was sufficient floor space in the cells, considering that they contained other detainees, their personal effects, and at least some furniture and other fixtures, to engage in meaningful exercise.  Moreover, even if there was ample room to engage in some in-cell exercise, this factor certainly would not be dispositive of plaintiff's claim.  Availability of alternatives to out-of-cell exercise time is but one factor in determining whether a deprivation of such time amounts to an Eighth Amendment violation.  Given the length of the detention at issue in this matter and the lack of any penological justification for the deprivation, strictly in-cell exercise time would not be a suitable alternative to out-of-cell exercise time.  See, e.g., Delaney v. DeTella, 123 F.Supp.2d 429, 437 (N.D. Ill. 2000)("The availability of in-cell exercise does not render constitutional the denial of

out-of-cell exercise, at least where the exercise restriction is lengthy. Thus, whether Delaney was able to exercise in his cell is beside the point"), *aff'd and remanded*, Delaney v. DeTella, supra, 256 F.3d 679 (7th Cir. 2001). In sum, there is little in the record to suggest that plaintiff was offered reasonable alternatives to out-of-cell exercise time.

The record also contains evidence that plaintiff suffered some health problems during his time at the Tuscola County Jail. In a note dated December 31, 2004, an unknown prison official stated that plaintiff had been using staples to cut himself on the wrist and that he was "very suicidal." (Defendant's Exhibit 1, p. 134) In the "County/State Medical Transfer Record" form filled out upon the transfer of plaintiff into the custody of the MDOC, it is stated that plaintiff "[h]as been seen by mental health on several occasions when he has made reference to suicide, found suicide note on 10/30/04, was treated at Bay Med Psychiatric Unit, Bay Med Hospital Bay City, MI. Numerous threats of suicidal or self destructive behavior. (Defendants' Exhibit 1, p. 1051) On April 9, 2005, plaintiff filled out a medical care request form in which he indicated that he was experiencing bad headaches and lower back pain, and that he was having difficulty urinating. (Defendants' Exhibit 1, p. 1058) A Tuscola County Jail Health and Safety Report dated November 29, 2004, indicates that plaintiff had been admitted to an inpatient psychiatric unit and that he was discharged with instructions that he be placed on suicide watch. (Defendant's Exhibit 1, p. 1138) While not all of these health problems may have been attributable to a lack of exercise, the court cannot rule out the possibility that a lack of exercise contributed to plaintiff's difficulties. See, e.g., Delaney, supra, 256 F.3d at 685 ("[W]e have

acknowledged the strong likelihood of psychological injury when segregated prisoners are denied all access to exercise for more than 90 days").

In sum, viewing the record in a light most favorable to plaintiff, there is evidence showing that plaintiff was deprived of all out-of-cell exercise time during his first stay at the jail (approximately 100 days) and that he was offered out-of-cell exercise time on only four occasions during the 456 days of his second stay at the jail. Further, defendants have failed to provide any evidence showing that there was a legitimate penological or institutional justification for the deprivation or that plaintiff was offered any reasonable alternative to out-of-cell exercise time. In addition, there is evidence indicating that plaintiff suffered some mental and physical health problems during his time at the Tuscola County Jail. It may reasonably be inferred that plaintiff's lack of exercise contributed, at least in some degree, to his health problems. Accordingly, the court finds that there is sufficient evidence in the record for a rational finder of fact to conclude that plaintiff was deprived of adequate exercise time and that the deprivation was, objectively, sufficiently serious to rise to the level of an Eighth Amendment violation.

The next issue the court must address is whether there is sufficient evidence in the record for a rational finder of fact to conclude that any individual defendant acted with the requisite state of mind. Plaintiff states in his affidavit that "[d]uring both the first time span from May 2003, thru September 17, 2003, and from January 26, 2004, thru April 27, 2005, I'd on several occasions asked Defendants' could I go out for some exercise and sunshine. Defendants' simply stated they didn't have time for such things and ignored any further request for exercise and out-

door sunshine." That is the sum total of plaintiff's evidentiary submission regarding defendants' subjective knowledge that plaintiff was being deprived of out-of-cell exercise time.

While the court finds it difficult to imagine, given the length of plaintiff's stay at the Tuscola County Jail, that no individual defendant was aware of the fact that plaintiff was allowed almost no out-of-cell exercise time, or that a lack of exercise might lead to physical and/or mental health problems, the court cannot decide this motion based upon its own suppositions. Rather, it must look to the evidence submitted by the parties and determine whether the evidence gives rise to any triable issues of fact. As indicated above, plaintiff submitted nothing other than his own three-page affidavit, which consists largely of conclusory statements not supported by any specific facts. Plaintiff has submitted no evidence, and there is nothing in the jail records and other documents submitted by defendants, showing that plaintiff filed a grievance or other formal complaint regarding the lack of out-of-cell exercise time, that he verbally complained to any of the named defendants regarding a lack of exercise time, or that he informed any of the named defendants that he was suffering mental and/or physical health problems due to a lack of exercise. Further, plaintiff has submitted no evidence indicating that he had a particularized need for exercise or that he communicated such needs to any of the named defendants. There is simply nothing in the record before the court from which a rational finder of fact could infer that any named defendant was aware that plaintiff was being denied exercise time or that his health and mental well-being were being adversely affected by the deprivation.

Again, it is difficult to believe that none of the named defendants knew that plaintiff was being deprived of regular out-of-cell exercise time, and if none were actually aware, they should

have been. However, as noted above, there is no evidence of actual knowledge on the part of any defendant. Moreover, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, supra, 511 U.S. at 838. Thus, whether defendants should have been aware of the deprivation is irrelevant. In sum, plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to whether any individual defendant knew of and disregarded an excessive risk to plaintiff's health.[4] Accordingly, the individual defendants are entitled to summary judgment with respect to plaintiff's denial of exercise claim.

### B.  Failure to Provide Nutritionally Adequate Diet

Plaintiff alleges that he suffers from numerous food allergies and that he requires a special diet as a result of those allergies. He further alleges that defendants failed to accommodate his special dietary needs and that he experienced health problems as a result of the deficiencies in his diet, such as weight loss, lethargy, headaches, excessive bowel movements, and stomach pain.

The Sixth Circuit has recognized that the Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health.

---

[4]By way of comparison, in Delaney, supra, 256 F.3d 686, the Seventh Circuit determined that an inmate who alleged a denial of exercise claim satisfied the subjective component of the Eighth Amendment inquiry by allegations that "he repeatedly complained to each of the named defendants, filed a grievance, and requested medical attention frequently because he could not exercise outside of his cell." Plaintiff neither alleged such facts in his complaint, nor presented evidence indicating that he registered similar complaints with any of the named defendants.

Cunningham v. Jones, 567 F.2d 653, 656 (6th Cir. 1977).  Food served to inmates need not be appetizing.  The Eighth Amendment merely requires that it be prepared and served in a sanitary environment and that it be adequate to meet an inmate's essential nutritional needs.  See,e.g., U.S. v. Michigan, 680 F.Supp. 270, 275 (W.D.Mich. 1988)("Where food is prepared and served in a sanitary manner and is nutritionally adequate to maintain normal health, the fact that it is unappetizing will not, standing alone, state a constitutional claim").

There is evidence in the record indicating that plaintiff has numerous food allergies and that he requires a special diet.  On or about July 7, 2003, Tuscola County Jail officials obtained medical records from plaintiff's treating physician, Dr. Cory E. Cookingham, pursuant to a release executed by plaintiff.  (Defendant's Exhibit 1, p. 889)  Dr. Cookingham then wrote a letter to jail officials in which he catalogued plaintiff's numerous allergies and other maladies.  (Defendant's Exhibit 1, p. 1212)  In the letter, Dr. Cookingham lists all of the foods that caused plaintiff to experience anaphylaxis, other allergic reactions, and gastroesophageal reflux – banana, kiwi, avocados, papaya, melons, bread, beer, fish, chicken, steak, milk, pistachio, cauliflower, broccoli, barley, navy bean, sweet potato, peach, rice, mushroom, egg, buckwheat, oat, pear, asparagus, cotton seed, ginger, mustard, pea, apple, almond, cantaloupe, peanut, and thyme.  Id.  Thus, there is evidence in the record substantiating plaintiff's allegations that he required some special dietary accommodations and, in any event, defendants do not dispute those allegations.

However, there is absolutely no evidence in record that plaintiff was denied sufficient food to meet his basic nutritional needs.  Plaintiff states in his affidavit that after defendant Kern

consulted with Dr. Cookingham, plaintiff was given "3 bowls of bran flakes a day, on[e] gallon of distilled water every three days, and two silver dollar size hamburgers daily." The Medical Transfer Record filled out upon plaintiff's transfer to MDOC custody indicates, consistent with plaintiff's statement, that plaintiff was placed on a "special diet[,] wheat cereal in am, wheat cereal and 2 low fat hamburger patties for lunch and dinner and wheat cereal at bedtime. Distilled water to drink due to contaminants in tap water." (Defendant's Exhibit 1, p. 1051) There is nothing in the record indicating that this diet was insufficient to meet plaintiff's nutritional needs, or that he was otherwise deprived of a diet containing sufficient nutrients to maintain adequate health. Plaintiff claims that he lost weight and suffered lethargy, headaches, excess bowel movements, and stomach pain due to dietary deficiencies, but there is no evidence in the record to corroborate these bare allegations. Plaintiff frequently complained about the food he was being served, but there is nothing before the court indicating that he complained of health problems resulting from dietary insufficiencies, and there are no medical records documenting the problems he claims to have suffered from. In sum, there is nothing in the record from which a rational trier of fact could conclude that plaintiff was deprived of an adequate diet.

Further, even if plaintiff had presented sufficient evidence for a jury to find that he was denied adequate food, there is no evidence that any of the named defendants were deliberately indifferent to plaintiff's dietary needs. The records submitted by defendants show that Tuscola County Jail officials solicited information from plaintiff's treating physician regarding plaintiff's food allergies, that special dietary instructions were placed in plaintiff's file, that the jail's

kitchen staff was informed of plaintiff's dietary issues, that plaintiff was put on a special diet consisting of foods that were included on the lists of acceptable foods provided by plaintiff to jail officials, and that jail officials even went out and purchased low-fat hamburger for plaintiff from a supplier recommended by plaintiff.  (Defendant's Exhibit 1, pp. 144, 152, 163, 178, 827, 899-901, 1051, 1212, 1214; Defendant's Exhibit 2, pp. 193-97; Affidavit of Leland Teschendorf (Exhibit 7))  Plaintiff has submitted no rebuttal evidence.  Thus, rather than showing deliberate indifference on the part of any defendant, the record reflects that Tuscola County jail officials went to great lengths to accommodate plaintiff's dietary needs.  In any event, there is certainly no evidence showing that any named defendant deliberately ignored plaintiff's dietary issues.  Accordingly, the individual defendants are entitled to summary judgment with respect to plaintiff's claim that he was denied adequate food.

### C.  Municipal Liability

Plaintiff has also alleged a pattern or practice claim against Tuscola County arising from the alleged violations of his right to be free of cruel and unusual punishment.  Having concluded that plaintiff has failed to present sufficient evidence for a jury to find that a constitutional violation occurred, there is no remaining basis for a claim of governmental liability.  See Scott v. Clay County, Tenn., 205 F.3d 867, 879 (6th Cir. 2000)("Nevertheless, our conclusion that no officer-defendant had deprived the plaintiff of any constitutional right *a fortiori* defeats the claim against the county as well"); Tanner v. County of Lenawee, 452 F.3d 472, 481-82 (6th Cir. 2006)("Because none of the individual officers violated the Tanners' constitutional rights, the claims against Lenawee County necessarily fail as a matter of law"); Burris v. Thorpe, 166

Fed.Appx. 799, 803 (6th Cir. 2006)("However, a municipality can only be held liable under § 1983 if the officer inflicted a constitutional deprivation"); Hubbard v. Gross, 2006 WL 1208078 at *9 (6th Cir.(Ky.))("Absent a violation of Hubbard's constitutional rights by a municipal employee, Hubbard cannot state a claim against the municipality").  Accordingly, the County, like the individual defendants, is entitled to summary judgment.

**V.  Conclusion**

For the reasons stated above, the court recommends that defendants' motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

|  |  |
|---|---|
|  | S/VIRGINIA M. MORGAN |
|  | VIRGINIA M. MORGAN |
| Dated:  August 1, 2006 | UNITED STATES MAGISTRATE JUDGE |

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on August 1, 2006.

                                             s/Kendra Byrd
                                             Case Manager to
                                             Magistrate Judge Virginia M. Morgan